In re PHILADELPHIA ATHLETIC CLUB, INC., Debtor.

Bankruptcy No. 80–02028G.

United States Bankruptcy Court, E.D. Pennsylvania.

April 3, 1984.

Pace Reich, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for Samuel Rappaport, buyer.

Alexander N. Rubin, Jr., Robert Szwajkos, Rubin, Quinn & Moss, Philadelphia, Pa., for trustee, Samuel M. Brodsky.

Marjorie O. Rendell, John F. Horstmann, Duane, Morris & Heckscher, Philadelphia, Pa., for Trustees of Central States, Southeast and Southwest Areas Pension Fund.

Samuel M. Brodsky, Philadelphia, Pa., Trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue in the dispute before us is whether an entity who purchased realty from the trustee, relying on the erroneous figures given him by the mortgagee, can successfully urge the application of the doctrine of equitable estoppel against said mortgagee. The question arose out of negotiations for the private sale of the property when, in endeavoring to calculate the purchase price, the intended purchaser relied on the mortgagee's erroneous understatement of the outstanding balance due on its encumbrance. For the reasons stated herein we find that equitable estoppel bars the mortgagee from asserting that the balance on the mortgage is greater than what it previously indicated.

The facts of this case are as follows:[1] The debtor filed for relief under chapter 11 of the Bankruptcy Code ("the Code") on August 18, 1980, although the case has since been converted to chapter 7. After the filing of the petition, Samuel Rappaport ("Rappaport"), Samuel M. Brodsky, the trustee, and Marjorie O. Rendell, Esquire ("Rendell") as counsel for the Trustees of Central States, Southeast and Southwest Areas Pension Fund ("the Fund") attended an auction of the debtor's realty.[2] No one having successfully bid at the auction, the trustee negotiated with Rappaport for its private sale. In the negotiations Rendell, as agent for the Fund, produced a letter drafted by her which stated that the outstanding balance on the Fund's mortgage was $570,139.58. Rappaport and the trustee justifiably relied on this figure in executing a contract for the sale of said realty and in fixing the price of such realty at $780,000.00, which consisted of the sum of $570,139.58 mortgage, plus approximately $110,000.00 in other encumbrances on the property. In the contract of sale Rappaport also agreed to pay the trustee $75,000.00 for administering the property during the pendency of the bankruptcy. On the day of the auction Rappaport gave the trustee a deposit of $200,000.00 as a downpayment on the realty. Later that day Rendell became aware that her letter had understated the balance due on the mortgage by approximately $30,000.00[3] and she promptly informed the other parties of that fact. Several days later the trustee and Rappaport executed an addendum to the agreement of sale intending nothing more than a clarification of the previous contract. The parties had no intent to effect a novation or increase the amount of consideration that passed under the contract. The addendum merely memorialized the constituent elements of the purchase price which, of course, included the $570,139.58 figure given by Rendell to Rappaport and the trustee. The purpose of the addendum was to shift from the trustee to Rappaport the risk of loss if the court were to decide ultimately that the application of estoppel in this controversy would be improper. In part the addendum stated that the consideration for the sale was the sum of "the mortgage held by the Fund as calculated as

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. The property was located at 306–20 North Broad Street, 304 North Broad Street and 1409–11 Vine Street in Philadelphia, Pennsylvania.

3. The amount in dispute is less than $30,000.00 since this figure will be netted against a tax fund of substantial amount which is currently held by the Fund.

of the date of closing of this sale less any monies paid by [Rappaport] prior to the date of closing of this sale, reported to be $570,139.58 as of August 31, 1982." One copy of the addendum, which was sent to Rendell by a party other than Rappaport or the trustee, contained a blank space in lieu of the $570,139.58 figure. At the closing, Rappaport paid the full amount claimed by the Fund with the difference between the actual mortgage balance and the balance quoted by Rendell being placed in escrow. Rappaport has commenced the action at bench seeking possession of this fund.

■ Rappaport urges that this is a proper case for applying the doctrine of equitable estoppel to preclude the Fund from contending that the balance of the mortgage debt was greater than that previously stated by their counsel, Rendell. Under Pennsylvania law the elements of equitable estoppel have been stated as follows:

> Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken. P.L.E. Estoppel § 21. When a party "by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts ... the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct, or statements." *Northwestern National Bank v. Commonwealth Bank v. Commonwealth*, 345 Pa. 192, 196–197, 27 A.2d 20, 23 (1942). See also *Tallarico Estate*, 425 Pa. 280, 288, 228 A.2d 736 (1967). It is well-established, however, that the burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence.

*Blofsen v. Cutaiar*, 460 Pa. 411, 417, 333 A.2d 841, 843–44 (1975). The facts of the case at bench meet the elements of the doctrine of equitable estoppel. As stated in *Northwestern, supra*, Rendell, as agent for the Fund, "intentionally" stated that the mortgage balance was $570,139.58, and such statement was made by her with the reasonable expectation that the trustee and Rappaport would rely upon it. Rappaport and the trustee rightfully relied and acted on Rendell's statement in contracting for the sale of the realty. Rappaport will undoubtedly be prejudiced if the Fund can now assert the erroneous reporting of the mortgage balance, since Rappaport will have parted with an amount in excess of the contract price. Consequently, Rappaport has proven a prima facie case for the application of the doctrine of equitable estoppel based on a showing of "clear, precise and unequivocal evidence."

■ The fund contends that the estoppel cannot applied in favor of one who has been harmed as a result of his own voluntary conduct rather than by the defendant's actions. *Northwestern*, 345 Pa. at 197, 27 A.2d at 23. The Fund asserts that Rappaport, rather than the Fund, precipitated the resulting harm, since Rappaport and the trustee executed an addendum to the sale contract after having acquired knowledge of the actual balance on the mortgage. We find the Fund's contention without merit since we determined above that the addendum worked only clarifying change in the contract of sale other than a shifting of the risk on the outcome of this proceeding.

We will enter judgment in favor of Rappaport allowing him to collect the escrow fund.