**In re COHOES INDUSTRIAL TERMINAL, INC., Debtor.**

**Bankruptcy No. 86 B 20201.**

United States Bankruptcy Court,
S.D. New York.

Oct. 10, 1986.

Harold Jones, United States Trustee, New York City; Eric Small, of counsel.

Leon C. Baker, White Plains, N.Y., for debtor.

Zubres, D'Agostino & Hoblock, P.C., Albany, N.Y., for Latham Sparrowbush, Associates; David Siegel, of counsel.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The United States trustee has moved for an order dismissing this Chapter 11 case or converting it to a case under Chapter 7 of the Bankruptcy Code or, in the alternative, directing the appointment of a Chapter 11 trustee. An unsecured creditor, Latham Sparrowbush Associates ("LSA"), has joined in the motion for a conversion to Chapter 7 or the appointment of a Chapter 11 trustee, but opposes the alternative request for a dismissal.

The debtor, Cohoes Industrial Terminal, Inc. ("C.I.T.") claimed a leasehold interest in a garden apartment complex in Latham, New York, known as Sparrowbush Apartments. The unsecured creditor, LSA, is the owner of the fee of Sparrowbush Apartments and has recovered the leasehold pursuant to an option in the lease which gave LSA the right to reacquire the leasehold in exchange for a $350,000 payment to the debtor. LSA's motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to regain possession of the apartment complex was granted by this court. *In re Cohoes Industrial Terminal, Inc.*, 62 B.R. 369 (Bankr.S.D.N.Y.1986). The debtor's only other major asset is a leasehold interest in an industrial complex known as Cohoes Industrial Terminal in Cohoes, New York. The debtor continues to operate the industrial terminal, which is a complex consisting of four old buildings with a substantial vacancy and, with a negative cash flow as of the filing of the debtor's Chapter 11 petition on April 28, 1986.

## FACTUAL BACKGROUND

There has been no real progress in this case during the more than five months since it was commenced. No plan of reorganization has been filed. More importantly, the debtor has not filed any schedules of assets and liabilities as required by Bankruptcy Rules 1007(b) and X–1007 and as prescribed by Official Form No. 6. Such financial information as the debtor did file is incomplete and unclear. The so-called operating statements which the debtor represented at the hearing would be filed later do not contain a cut-off date reflecting when the debtor-in-possession figures begin. Bankruptcy Rule X–1007(b) mandates that a trustee or debtor in possession must furnish the United States trustee with such information as is required in order to assist the United States trustee in supervising the case. The rule gives the United States trustee the authority to promulgate local

regulations or rules which delineate such requirements. 6 Norton Bankr.L. & Prac. Rule X–1007 at p. 802 (1985 ed.); *See also In re Denrose Diamond Co., Inc.,* 49 B.R. 754, 758 (Bankr.S.D.N.Y.1985) (citing 28 U.S.C. § 586(a)(3)). The debtor has been operating without fire or liability insurance for the last 9 months. Its vice president testified that he has not yet been able to find a carrier willing to insure the premises because it has an antiquated sprinkler system and because its substantial vacancy was conducive to vandalism.

A major concern for unsecured creditors is the fact that the debtor has not paid post-petition rent or mortgage charges because the owner of the building, Coleman Associates, Ltd. and the mortgagee, Coleman Capital Corporation Employee's Profit Sharing Trust ("Coleman Capital"), are related entities, controlled by the debtor's president, Leon Baker, and his wife, Gloria Baker. The increase in the post-petition administrative obligations for rent and mortgage will result in increased priority claims to the potential detriment of unsecured claimants. Similarly, post-petition, real estate taxes, which are also priority debts, have not been paid because the City of Cohoes has, according to the debtor, tacitly consented to the deferral of these taxes so as to help the debtor stay in business in order to preserve the jobs of 500 or more people who work in the Cohoes Industrial Terminal.

The debtor's corporate secretary, Gloria Baker, claims, and the debtor agrees, that she is the beneficial owner of the disputed garden apartment complex lease in Latham, New York and that the debtor is her unrecorded nominee, holding merely bare legal title to the lease. Accordingly, she sought to have the debtor transfer its interest in the lease to her so that she could then continue the dispute with LSA, the owner of the fee, as to whether or not LSA could unilaterally exercise its option to purchase the lease for $350,000. The debtor's transfer of its interest in the Sparrowbush lease would mean that Mrs. Baker, rather than the debtor, would be entitled to receive the $350,000 purchase price. Although, not surprisingly, the debtor supported Mrs. Baker's motion for such a transfer, this court denied the request as not in the best interests of this estate. *In re Cohoes Industrial Terminal,* 62 B.R. at 378–380.

The conflicts of interest in this case abound. The owner of the industrial complex in Cohoes, New York is Cohoes Associates, a limited partnership of which Leon Baker is the sole general partner. The owner of the land is Coleman Capital, the two trustees and the two beneficiaries of which are Leon Baker and his wife, Gloria. Mr. and Mrs. Baker hold the mortgage upon the Cohoes property. The debtor is required to pay rent to Cohoes Associates, which includes the obligations of the landlord, Cohoes Associates, that are owed to Coleman Capital and to Mr. and Mrs. Baker. The debtor is required under its lease to pay all of the expenses with respect to the Cohoes Industrial Complex. Leon Baker, the debtor's president and sole shareholder, is also serving as attorney for the debtor, although no order of general retention has been approved by this court. He is a prepetition creditor for legal services billed in the amount of $17,500. Gloria Baker, the debtor's secretary, is a creditor holding a claim in the amount of $1350 for bookkeeping services. Their pension trust, Coleman Capital, holds a claim for the rental of an automobile leased to the debtor.

LSA holds more than two-thirds in amount of the unsecured claims against the debtor, exclusive of insider claims, and asserts that it does not intend to accept any plan other than a liquidating Chapter 11 plan. LSA contends that the debtor does not intend to reorganize and that it filed a Chapter 11 petition, (according to the testimony of Leon Baker), to prevent LSA from executing on a state court judgment to recover possession of the garden apartment complex in Latham, New York. LSA maintains that this Chapter 11 petition was filed for the purpose of promoting the personal interests of Leon and Gloria Baker to the exclusion of the interests of the debtor's arms-length creditors. To support this

charge, LSA points to the fact that Gloria Baker, with the support of the debtor, claims that she is the beneficial owner of the disputed garden apartment complex lease and that the debtor is her nominee for the purpose of holding bare legal title.

## DISCUSSION

■ A debtor's failure to file proper schedules of assets and liabilities; a failure to file accurate monthly operating statements of assets and liabilities; an inability to obtain adequate insurance to protect its property; a failure to pay post-petition rent and mortgage charges, and the absence of a plan of reorganization or any forward movement during the more than five months after the filing of a Chapter 11 petition constitute sufficient cause for either dismissing the case or converting it for liquidation pursuant to 11 U.S.C. § 1112(b). *In re Denrose Diamond Co., Inc.* 49 B.R. 754; *In re 3868–70 White Plains Road, Inc.,* 28 B.R. 515 (Bankr.S.D. N.Y.1983); *In re CCN Realty Corp.,* 23 B.R. 261 (Bankr.S.D.N.Y.1982); *In re Paccar Financial Corp. v. Pappas (In re Pappas),* 17 B.R. 662, 8 B.C.D. 927 (Bankr.D. Mass.1982); *In re Larmar Estates, Inc.,* 6 B.R. 933, 6 B.C.D. 1300 (Bankr.E.D.N.Y. 1980). However, this is not a case where a mortgagee or secured creditor is being thwarted by the debtor from foreclosing upon secured collateral or where such collateral is eroding in value during the Chapter 11 period. The objectants in this case are the United States trustee, representing the unsecured creditors, and LSA, the debtor's largest unsecured creditor. The lack of any reorganizational progress by the debtor is in large measure due to the continuing litigation with LSA in order to preserve Gloria Baker's personal interest in the apartment complex lease which she claims as beneficial owner and which she alleges was held by the debtor as her nominee. Although Gloria Baker and her husband, Leon Baker, assert that their interests parallel those of the debtor for purposes of reorganization, their individual conflicting interests vis-a-vis the debtor have substantially contributed to the condi-

tions which prompted the United States trustee to move for a dismissal, conversion or the appointment of a Chapter 11 trustee.

There is no question that the debtor is in financial distress and cannot continue to permit priority claims for taxes and rents to accrue to the detriment of unsecured creditors, notwithstanding that Mr. and Mrs. Baker in their conflicting roles as controlling interests on behalf of the debtor's landlord and mortgage holder are willing to defer the payment of rent and mortgage charges. Moreover, the unsecured creditors would benefit if the debtor could keep the $350,000 payment for the termination of the garden apartment complex lease. However, Leon Baker, as president of the debtor, sought to transfer the rights to the terminated lease to his wife Gloria, which transfer would carry with it the right to the $350,000 termination payment.

If this were the usual Chapter 11 case where the secured creditors, acting alone or in concert with unsecured creditors and the United States trustee, sought to convert or dismiss this case for the reasons expressed in the motion papers, such motion would be granted. However, this case does not present the usual conflict between the interests of the debtor and those of secured and unsecured claimholders. Here the secured claimholders, Leon and Gloria Baker and their related entities, control the debtor and seek to continue a joint effort to effect a reorganization. The only entity in support of the United States trustee's motion is LSA, the debtor's larges unsecured creditor.

■ As the holder of the largest unsecured claim against the debtor, LSA could not propose and have confirmed a liquidating Chapter 11 plan without the consent of the Bakers' secured claims. *See* 11 U.S.C. § 1129(a)(7). Nor could LSA confirm a liquidating plan that would impair or cram down the Bakers' secured claims to less than their allowed amount because the Bakers' could cash out their claims for the full allowed amount by exercising their right of election in accordance with the

provisions of 11 U.S.C. § 1111(b). Thus, in order for an unsecured class of claims to realize any distribution under a confirmed reorganization plan in this case there first must be sufficient equity over and above the secured claims, otherwise the unsecured class must be wiped out pursuant to the modified absolute priority rule now reflected in the "fair and equitable" test expressed in 11 U.S.C. § 1129(b)(1) and (2). Obviously, if there is sufficient equity for unsecured claims after the payment in full of the allowed secured claims, the unsecured claims would then not be able to prove an "absence of a reasonable likelihood of rehabilitation" as required for conversion or dismissal under 11 U.S.C. § 1112(b)(1).

◼ A conversion of this case for liquidation under Chapter 7 would also be of no comfort to the unsecured claimholders unless the secured claims could be paid in full. Similarly a dismissal of this case would not affect the priority rights of the secured claims. Therefore, the unsecured claims can assert recognizable interests only if a reorganization is feasible or if the Bakers' right to full satisfaction of their secured claims is not in jeopardy. Thus, this case presents an unusual twist where the secured claims want to continue to underwrite this Chapter 11 case in order to endeavor to effect a reorganization, whereas the largest unsecured creditor and the United States trustee, on behalf of all other unsecured creditors, desire to abort a reorganizational attempt that might benefit the unsecured claims, if in fact such claims have any cognizable interests. Hence, the position of the unsecured claimholders and the United States trustee appears to be that there is sufficient equity in this case to support a reorganization but that they believe the unsecured claims would receive a larger distribution if the debtor were liquidated now.

If there is sufficient equity in this case to support a reorganization, the court should afford the debtor and its secured claimholders an opportunity to accomplish this purpose and not convert or dismiss the Chapter 11 petition at this stage. A liquidation of the debtor would simply enable the debtor's principals, Leon and Gloria Baker, in their roles as insider secured claimholders, to reacquire the leased premises upon foreclosure and to form a new corporate enterprise to lease the industrial complex which they own, free from the unsecured claims which are now asserted against this debtor.

◼ In light of the fact that the debtor, its lessor and the mortgagee of its real estate are all related entities in support of a Chapter 11 reorganization, in which case the unsecured claims would have cognizable interests only if there is sufficient equity remaining after the payment of secured claims, it follows that a conversion to Chapter 7 or a dismissal should not be ordered. Moreover, LSA, the debtor's largest creditor, opposes the United States trustee's alternative request for a dismissal. Hence, there remains for consideration that portion of the United States trustee's motion which is addressed to the request for the appointment of a Chapter 11 trustee.

◼ Upon request of a party in interest, and after notice and a hearing, the court is authorized pursuant to 11 U.S.C. § 1104(a)(1) to order the appointment of a trustee for cause. In this context, the evidence reveals that the debtor has not filed any plan of reorganization since the commencement of this case on April 28, 1986. It has not filed any financial information which would satisfy the United States trustee's operating guidelines. There are no schedules of actual cash receipts and disbursements, no schedules of aged accounts payable or receivable, no schedules of taxes collected, received, due or withheld. Moreover, the debtor has not filed any schedule of assets and liabilities. The debtor's failure to comply with the United States trustee's operating guidelines is sufficient cause for the appointment of a trustee.

Here the Debtor's failure to comply with the guidelines has had the immediate consequence of keeping its creditors in the dark as to its financial performance while at the same time raising sev-

eral disturbing issues of concern to its creditors and anyone who would attempt to understand its prospects.

\* \* \* \* \* \*

Thus, this is a case where the financial statements that have been filed raise significant questions and the Debtor failed to file any further financial statements. Such conduct demands the appointment of a trustee to cure the debtor's incompetance, [*sic*] as provided by § 1104(a) and in the best interest of creditors as provided by § 1104(b).

*Denrose Diamond Co., Inc.,* 49 B.R. at 759.

■ The debtor received a check in the sum of $350,000 from LSA when LSA exercised its option to reacquire the apartment complex leasehold. However, it is not clear who holds these funds. If the debtor transfers its interest in this leasehold to Gloria Baker, as it proposed, then Gloria Baker could remove these funds from this estate.

The debtor has not applied for authorization to retain its president, Leon Baker, as counsel for the debtor. However, Mr. Baker continues to represent the debtor, as well as being the sole shareholder of the debtor's landlord, and an unsecured creditor. Mr. Baker and his wife, Gloria, are also the holders of the mortgage on the terminal. Additionally, Gloria Baker claims the beneficial ownership of the apartment complex leasehold. Mr. Baker has also taken the position that as between the debtor and the owners of the land (in which ownership Mr. Baker has an interest) the debtor should assume the responsibility for installing a sewer, which is required to connect the terminal to the city sewer, at an estimated cost in excess of $95,000. In all of these conflicting capacities, Mr. Baker is in no position to exercise undivided loyalty to the rights of all interested parties.

The record of this proceeding raises serious questions as to the ability and motivation of the debtor in possession to proceed promptly with an efficient and responsible liquidation. In a chapter 7 case, a disinterested trustee's sole commitment will be "to the promotion of parity among interested parties, rather than to self interest." *In re Maplewood Poultry Co.,* 2 B.R. 545, 549 (Bkrtcy., D.Maine 1980). *See also In re L.S. Good & Co.,* supra, 8 B.R. [315] at 318, 7 B.C.D. at 105 [ (Bkrtcy., N.W.Va.1980) ].

*In re E. Paul Kovacs and Company, Inc.,* 16 B.R. 203 at 205 (Bankr.D.Conn.1981). *See also In re Philadelphia Athletic Club, Inc.,* 15 B.R. 60, at 62 (Bankr.E.D.Pa.1981).

The appointment of a Chapter 11 trustee is needed in this case to review the debtor's financial involvement. A Chapter 11 trustee will be in a good position to determine whether or not the debtor can be reorganized and along which lines such reorganization or liquidation should proceed. An independent Chapter 11 trustee will ensure that the unsecured creditors are not prejudiced by the debtor's failure to comply with the financial reporting requirements imposed under the Bankruptcy Code and Rules. A trustee would file proper schedules and financial reports. The interests of all the creditors will be best served by the operation of the debtor under the *aegis* of an independent and disinterested Chapter 11 trustee.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of this case pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(2)(A) concerning the administration of the estate.

2. The United States trustee's motion is granted to the extent that a Chapter 11 trustee shall be appointed to shepherd the debtor through this Chapter 11 case.

SETTLE ORDER on notice.