In re PETRALEX STAINLESS, LTD., Debtor.

PETRALEX STAINLESS, LTD. (through its petitioning creditors), Plaintiff,

v.

BISHOP TUBE DIVISION OF CHRISTIANA METALS, Defendant.

Bankruptcy No. 87–03529 T.
Adv. No. 87–0683.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 15, 1987.

Josy W. Ingersoll, James L. Patton, Bruce L. Silverstein, Young, Conaway, Stargatt & Taylor, Wilmington, Del., Joseph E. Lewis, Stevens & Lee, Reading, Pa., David A. Botwinik, Pavia & Harcourt, New York City, for Bishop Tube Div. of Christiana Metals.

Janet M. Sonnenfeld, Philadelphia, Pa., for petitioning Creditors.

Jami Wintz McKeon, William P. Quinn, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., for Petralex.

## MEMORANDUM AND OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Seven motions and a complaint covering preliminary, interrelated questions in this involuntary chapter 11 are before this Court[1]:

1) The Motion of Bishop for Declaration of Termination of (equipment lease and sales/service agreement) Agreements ("Bishop's motion for termination") is denied;

2) The Debtor's Motion pursuant to 11 U.S.C. §§ 362, 365 and 366 to Compel Bishop to Supply Utility and other Services Pursuant to Executory Contracts ("Debt-

or's motion to compel") is granted in part, denied in part;

3) The Motion of Bishop in the alternative for an Order dismissing Petition, for Relief and Conversion to Chapter 7, and for Appointment of an Independent Trustee ("Bishop's motion to dismiss, convert or appoint a trustee"), is granted in part, denied in part;

4) The motion for an Order to Restore the Status Quo ("motion to restore the status quo") is moot;

5) The Complaint for a Preliminary Injunction (debtor v. Bishop Tube) ("Complaint") is moot;

6) The Debtor's Motion for Actual and Punitive Damages for Willful Violation of the Automatic Stay ("debtor's automatic stay motion") is continued generally;

7) The Motion of Bishop to Disqualify the Law Firm of Morgan, Lewis & Bockius as Debtor's Counsel ("motion to disqualify") is granted;

8) The Motion of Bishop to Quash Subpoenas or for a Protective Order ("motion to quash") is continued generally.

A discussion of these matters follows. Certain facts[2] and relationships are significant in analyzing this international saga. Debtor, Petralex Stainless, Ltd. ("Petralex")[3] was formed pursuant to a 1985 joint venture agreement between Frederick P. Henry ("Henry"), and two Italian corporations, Sitai S.P.A. and Metalsteel S.P.A. The Petralex Board of Directors consists of Henry (50% shareholder), Gilberto Borromeo ("Borromeo") (25% shareholder), and Germono Bocciolone (Bocciolone") (25% shareholder). Borromeo and Bocciolone own controlling shares in Metalsteel and Sitai, respectively. Notes of Testimony of July 29, 1987 ("N.T."), at 11.

---

1. Our review includes the responsive pleadings, which were filed on all of these matters except the motion to resume the status quo.

2. This opinion constitutes the finds of fact and conclusions of law required by Bankruptcy Rule 7052.

3. We acknowledge that the parties dispute who actually represents Petralex: Henry, Borromeo

and Bocciolone (the board); Borromeo and Bocciolone individually or through Bishop; or the petitioning creditors. "Debtor" and "Petralex" will refer to the position taken on behalf of Petralex by counsel purporting to represent Petralex. These designations are for convenience and clarity and in no way indicate any position we might ultimately take on any related issue.

Prior to formation of Petralex, Henry owned a separate entity known as Petralex Stainless Sales, Ltd. ("Petralex Sales"). Petralex entered into two agreements with Petralex Sales, a Management Agreement and a Sales and Marketing Agreement.

Petralex also entered agreements with the Bishop Tube Division of Christiana Metals ("Bishop"), a corporation in which Borromeo and Bocciolone held controlling interests. The agreements allowed Petralex to lease from Bishop space and utility services ("Space Lease") and equipment and necessary services ("Equipment Lease"). Petralex and Bishop also signed a Services/Supply Agreement ("Services/Supply Agreement"), under which they promised to provide various metallurgical and related services to each other.

The parties exchanged letters discussing Petralex's delinquencies on the space and equipment leases. On June 23, 1987, only a day after Bishop mailed one of these letters, Bishop cut off all services, including utility services. On June 25, 1987, the Chester County Court of Common Pleas granted Petralex's request for a preliminary injunction and directed Bishop to restore services. At a later hearing, the Common Pleas Court declined to continue and instead dissolved the injunction.

Henry, Petralex Sales and Cecilia Metheny, Ltd. ("Metheny") (collectively, "the petitioning creditors") filed an involuntary petition against Petralex on July 15, 1987. Henry is the sole shareholder of Petralex Sales. N.T. at 6. Henry and his wife own all the shares of Metheny. N.T. at 6, 33.

On July 29 and 30, 1987, we held a hearing on the complaint and two motions. Consolidating for hearing the seven motions and complaint, on September 22, 1987 we heard testimony and argument. By separate order dated September 21, 1987, we have granted a portion of one of Bishop's motions by directing that a trustee be appointed.

■ The preliminary issue in this case is whether the filing of this involuntary petition by one of the joint venturers served to dissolve the joint venture. If the joint venture is now dissolved, this court lacks jurisdiction to handle these matters. Petralex cites [4] three analogous cases. Interpreting Pennsylvania and federal bankruptcy law, Judge Goldhaber held that Section 365(e) [5] and the Supremacy Clause control Pennsylvania state law on the issue of dissolution; § 365(e) renders contractual language requiring the removal of a partner unenforceable. *In re Rittenhouse*, 56 B.R. 131, 13 Bankr.Ct.Dec. 1168, 1169, 14 C.B.C.2d 115, 117 (Bankr.E.D.Pa.1985). Public policy analysis also dictates that the filing of a chapter 11 by a partner does not dissolve a partnership. *See e.g., In re Safren*, 65 B.R. 566, 569, 14 Bankr.Ct.Dec. 1261, 1262, Bankr.L.Dec. para. 71478. (Bankr.C.D.Cal. 1986) (dissolution based solely on an involuntary filing could have tax consequences rendering reorganization impossible). We follow Judge Goldhaber's lead [6] and hold

---

**4.** At the September 21, 1987 hearing, we requested that counsel communicate any additional support for their positions. Thus, these cases are not cited in the briefs submitted by the parties.

**5.** Section 365(e) provides:

(e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

11 U.S.C. § 365(e).

**6.** The cases cited in Bishop's brief can be distinguished. One case involved an interpretation of a dissimilar section of the Bankruptcy Act of 1898. *Preston v. U.S. (In re North High Limited)*, 3 B.R. 232 (Bankr.S.D.Ohio 1980). The other two cases involve an interpretation of state law and no analysis of the interplay between § 365 and the state statutes. *Allan Const. Co., Inc. v. U.S.*, 646 F.2d 487 (Ct.Cl.1981), *In re Fulton*, 43 B.R. 273 (Bankr.M.D.Tenn.1984).

that the filing of the instant complaint did not dissolve Petralex. Thus, proper jurisdiction exists.

■ The key issue in both Bishop's motion for termination and debtor's motion to compel is the same: were the equipment lease and/or the sales/service agreement validly terminated prepetition? If so, they are not property of the estate. *In re Triangle Laboratories, Inc.*, 663 F.2d 463 (3rd Cir.1981). We reject Bishop's argument that the default in payment constituted a material breach under state law, and thus termination. Default is not analogous to termination; a lease can be assumed despite a default, but a terminated lease cannot be assumed. *D'Lites of America v. Zohar-Greenboim, Inc. (In re D'Lites of America, Inc.)*, 66 B.R. 558, 560 & n. 2 (Bankr.N.D.Ga.1986). We have held that a lease is not terminated and thus rendered unassumable until the whole termination process has been completed. *In re De Santis*, 66 B.R. 998, 1003 (Bankr.E.D.Pa. 1986). If a debtor has available a method of curing a default, the termination process has not been completed. *Id.* at n. 11. Applying this analysis, we hold that the equipment lease and sales/service agreement were not terminated simply because a breach occurred.

■ Any attempt to terminate was rendered ineffective because of the language in Bishop's June 22, 1987 letter[7] which fails to meet the clear and unambiguous notice standard required under Pennsylvania law. *Eastern Milk Producers Association, Inc. v. Lehigh Valley Cooperative Farmers*, 568 F.Supp. 1205, 1207 (E.D.Pa. 1983), *quoting Maloney v. Madrid Motor Corp.*, 385 Pa. 224, 122 A.2d 694, 696 (1956). We see no "affirmative action" on the part of Bishop suggesting that this was an attempt to terminate. *In re D'Lites*, 66

B.R. 558, 560. The parties had been discussing for many months the possibility of arranging repayment terms, although no written agreement had been achieved. N.T. at 44. On April 17, 1987, Bishop sent a letter to Henry threatening to *terminate* the lease between Bishop and Petralex if payment was not forthcoming. Bishop's trial brief at Exh. "B." Despite these threats to terminate, the lease was not cancelled, even in the face of Petralex's continuing failure to pay. N.T. at 43 (generally), 42 (arrears existing after January letter). By contrast, the June 22, 1987 letter suggests only that service might be *disconnected.*[8] It contains no statement that the lease will be terminated. It is more a dunning letter than a clear statement of an intent to terminate.

■ We will compel Bishop to supply utilities. *In re Good Time Charlie's, Ltd.*, 25 B.R. 226 (Bankr.E.D.Pa.1982). The "special position" Bishop occupies with respect to the debtor is evidenced by Henry's testimony that it would be impossible for Petralex to bypass Bishop and secure its own source for utilities. N.T. at 16. The parties have agreed that any hearing regarding violation of the automatic stay[9] shall be continued generally.

Thus, we deny Bishop's motion to terminate and grant Petralex's motion to compel, except to the extent that this particular Petralex motion requests relief for violation of the automatic stay.

Bishop presses its motion to dismiss/convert or appoint a trustee. We have ordered that the U.S. trustee appoint a trustee, and we now grant Bishop's motion in part by ordering that an order for relief be entered.

■ We specifically deny that portion of Bishop's motion designated as a motion

---

7. In relevant part, the letter states that Petralex "... has failed to pay ... (which) ... is a material breach ... Unless we receive payment by certified check of all past due amounts ... we will discontinue all services and disconnect all equipment utilities." (Parenthetical added) Bishop's trial brief at Exh. "J."

8. Ambiguous language in an agreement will be construed against the party drafting the agree-

ment. *Andrews v. Fleet Real Estate Funding (In re Andrews)* 78 B.R. 78, 81 (E.D.Pa.1987). In this case, we must hold Bishop responsible for insuring that the language of its letter was adequate to terminate the agreement.

9. Henry, president and chief executive officer of Petralex, has stated that Petralex can provide a security deposit.

to dismiss. Bishop has failed to meet its burden of establishing that Henry acted in bad faith in filing this involuntary petition. A presumption of good faith exists. *U.S. Fidelity & Guar. Co. v. DJF Realty and Suppliers, Inc.,* 58 B.R. 1008 (N.D.N.Y. 1986). The burden of proving bad faith is on Bishop. *Id., See also In re CLE Corp.,* 59 B.R. 579, 583 (Bankr.N.D.Ga.1986). It must be proved by a preponderance of the evidence.

The case by case factual analysis followed by Petralex and Bishop presents only scattered images of the type of activity that demonstrates bad faith. This vagueness is engendered by the fact that courts have applied different tests to measure bad faith,[10] thus finding bad faith in a wide spectrum of activity. Some courts use an objective standard to determine bad faith and ask whether the prototypical "reasonable person" in the position of the creditor would have filed the petition.[11] Other courts analyze the creditor's motivation and conduct, thus applying a subjective standard.[12] A third group of courts combines these approaches and creates a two-part test.[13]

■ We must first choose the appropriate standard to apply. We agree with those courts that have suggested that Bankruptcy Rule 9011 codifies the "good faith" filing requirement by mandating that papers be verified.[14] The attorney/party must certify the validity of the filing on both objective (knowledge, information and belief based on reasonable inquiry) and subjective (no improper purpose) levels.[15] Petitioning creditors who have already submitted a signed and verified petition in accordance with Rule 9011 should be held to the standard created by that Rule: a dual subjective and objective test for good faith.

■ Applying this two part test to the instant case, it appears that Bishop is contending that the petitioning creditors failed to meet the subjective prong of this test because they filed for an improper purpose—to side-step the state court order dissolving the injunction. Unlike the petitioning creditors in the cases cited by Bishop,[16] Bishop has not proven that Henry filed for the sole purpose of circumventing the state court ruling. To the extent that

---

**10.** *See e.g., In re Molen Drilling Co., Inc.,* 68 B.R. 840, 843–44 (Bankr.D.Mont.1987).

**11.** *See e.g., In re Crown Sportswear, Inc.,* 575 F.2d 991, 993–94 (1st Cir.1978) (based on language in § 95(a) of the Bankruptcy Act, which "embodies" a "charitable" attitude toward creditors who have mistaken the total number of creditors); *In re Gibraltor Amusements, Ltd.,* 187 F.Supp. 931, 935–36 (E.D.N.Y.1960), *aff'd* 291 F.2d 22 (2d Cir.1961), *cert. den.* 368 U.S. 925, 82 S.Ct. 360, 7 L.Ed.2d 190 (1961); *In re Wavelength, Inc.,* 61 B.R. 614, 620 (9th Cir. BAP 1986); *In re Midwest Processing Co.,* 41 B.R. 90, 102 (Bankr.D.N.D.1984).

**12.** *See e.g., Basin Electric Power Cooperative v. Midwest Processing Company,* 47 B.R. 903, 909 (D.N.D.1984), *aff'd* 769 F.2d 483 (8th Cir.1985), *cert. den.* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986).

**13.** *See e.g., United States Fidelity & Guar. Co. v. DJF Realty & Supplies,* 58 B.R. 1008, 1101 (N.D. N.Y.1986) (must look at conduct and motives); *In re Alta Title Co.,* 55 B.R. 133, 141 (Bankr.D. Utah 1985) (scope of the petitioning creditor's prefiling inquiry and the absence of any improper purpose in filing the petition); *In re Molen Drilling Co., Inc.,* 68 B.R. 840, 844 (Bankr. D.Mont.1987).

**14.** Rule 9011 provides:

"(a) Signature. Every petition ... shall be signed ... the signature of an attorney or a party constitutes a certificate by that attorney or party has read the document; that to the best of that attorney or party's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument ... *and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation* ..." (emphasis added)

Rule 9011, as amended March 30, 1987, eff. August 1, 1987.

**15.** *See e.g., In re Molen Drilling Co., Inc.,* 68 B.R. 840, 844, *citing In re Alta Title Co.,* 55 B.R. 133, 140–141.

**16.** In the *Winn* and *Findlay* decisions cited by Bishop, the sole purpose of the filing was circumvention of the underlying state court proceeding. No evidence was presented that the petitioning creditors had any legitimate concerns about the debtor's financial conditions. *In re Winn,* 49 B.R. 237, 239, 13 B.C.D. 3, 9 (Bankr.M.D.Fla.1985), *In re Wally Findlay Galleries,* 36 B.R. 849 (Bankr.S.D.N.Y.1984).

he was motivated by a desire to limit the effect of that ruling, we find that such action is not per se improper. Potential debtors are not denied the fresh start provided by bankruptcy merely because they have previously sought related state court relief.[17] We find that Henry's actions meet the subjective standard of ‘our two prong test.

Bishop does not argue that Henry's conduct failed to meet an objective standard of reasonableness. Indeed, none of the parties deny that Petralex was in dire financial straits as of the date of filing. N.T. 10–11. Henry testified that Petralex was unable to pay its debts as they came due. N.T. at 11. Bankruptcy was clearly one option that a reasonable person in Henry's position might have pursued.

■■■ The parties also disagree whether, pursuant to § 303(b), petitioning creditor Metheny's claim is subject to bona fide dispute, creating cause for dismissal.[18] Section 303(b) prevents a creditor from serving as a petitioning creditor in an involuntary bankruptcy if that creditor's claim is the subject of a bona fide dispute. Bishop argues that Metheny's claim *should* be disputed because the by-laws prohibited Henry from entering contracts with related entities, such as Metheny, without board approval. He did not request board approval on the Metheny deal. N.T. at 35. We have found no cases on point. However, the clear language of the Code does not include debts which should, but which

have not yet actually been, disputed.[19] We must be guided by the plain meaning of the statutory words in our interpretation. *See generally, In re James R. Corbitt, Co.,* 48 B.R. 937, 939 (Bankr.E.D.Va.1985) (interpreting § 507), *citing Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 431 L.Ed.2d 469 (1975).

■■■ Finally, Bishop urges dismissal because no likelihood of rehabilitation exists. We have held that the leases are indeed property of the estate. Henry has testified that Petralex employees are eager to return to work, N.T. at 22, that Petralex has significant uncompleted work in progress, N.T. at 22, that Petralex has outstanding orders, N.T. at 23, and that Petralex could make payment to Bishop on a pay-as-you-go basis. N.T. at 32. It is not a foregone conclusion that reorganization efforts are doomed.

We reserve judgment on Bishop's request that we convert this case to a chapter 7. It is too early to tell, particularly with the recent interruption of utility service, whether a successful reorganization is possible. *See* discussion, N.T. at 20–21.

■■■ We supplement the order appointing a trustee by noting that this appointment is not grounded on fraud, gross mismanagement or any § 1104(a)(1) "cause." We have relied on § 1104(a)(2), which allows us to order the appointment of a trustee when it would be in the interests of creditors or the estate. The board is effectively deadlocked.[20] It has been unable to

---

**17.** This is the context in which many cases come before the Court. For example, filing to prevent foreclosure is not per se invalid if it is done for the legitimate purpose of rehabilitation or reorganization. *In re Chisum,* 68 B.R. 471 (9th Cir. B.A.P. 1986), *citing Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584 (3d Cir.1985).

**18.** Even if a bona fide dispute did exist, we would have discretionary power to allow the joinder of additional creditors to "cure" the defective filing. *See e.g.,* Bankruptcy Rule 1003(d), 11 U.S.C. § 303(c). *See also In re Elsub,* 66 B.R. 189 (Bankr.D.N.J.1986).

**19.** The burden of proving the bad faith of the petitioning creditors is on Bishop. *In re Elsub Corp.,* 66 B.R. 172, 188. Bishop, however, has offered no proof that this debt is now disputed; no proof that the board does dispute this debt;

no proof that the board would not, if asked, approve this debt; no proof that the board ever disputed this debt, and no proof that the services invoiced by Metheny were not provided. *See* N.T. at 6, 33.

**20.** The Italian board members asked Henry to fire a key management person, but Henry refused. Notes of testimony, July 30, 1987 ("N.T. 30") at 20. At a meeting in May of 1987, the other board members asked Henry to give up his management responsibilities. N.T. 30 at 23. He did not. The two Italian directors want Petralex dissolved. *See* Bishop's trial brief, Borromeo and Bocciolone affidavits, Exhs. "L" and "M." Bishop alleges that Henry has refused to meet with the Italian directors. Bishop trial brief at 31. Under these facts, we find that the board is effectively, if not actually, deadlocked.

resolve financing problems, which, in turn, raises grave concerns about Petralex's ability to operate profitably. Absent resolution of these problems, even Petralex agrees that it will be unable to continue operations. *See* discussion on the record of Petralex' counsel, J. McKeon, September 21, 1987; Opening Memorandum of Bishop at 31–32. Further, we are faced with the perplexing question of exactly who speaks for the estate. *See* discussion, *supra*, at n. 3. Under such chaotic circumstances, a disinterested trustee can impartially assess Petralex's condition and work with the warring factions, thus facilitating the decision making process.[21]

The relief prayed for in the motion for an order to resume the status quo is subsumed in the motions analyzed above. An appropriate order will be entered. The complaint for preliminary injunction was heard on July 29, 1987. At this juncture we find this Complaint moot, and note further that counsel for petitioning creditors was not present at the September 22, 1987 hearing to press the complaint. Debtor's automatic stay motion is continued generally based on the oral stipulation of the parties entered of record on September 22, 1987.

■ Bishop's motion to disqualify Morgan, Lewis & Bockius ("ML & B") is hereby granted. Section 1107(a) gives the debtor in possession the ability to employ counsel,[22] who must be "disinterested" and not hold an interest adverse to the estate. 11 U.S.C. § 327(a). A "disinterested" person is one who:

(A) is not a creditor, an equity security holder, or an insider ...

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor ...

(E) does not have an interest materially adverse to the interest of the estate or any class of creditors ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... *or for any other reason.*

11 U.S.C. § 101(13) (emphasis added). Included within the definition of "insider" are persons in control of the debtor, and debtor's directors and officers. 11 U.S.C. § 101(30). Also included are general partners in the debtor, relatives of general partners, or partnerships in which the debtor is the general partner. *Id.*

The "for any other reason" language in § 101(13)(E) has been interpreted to give the court wide discretion. *See e.g., In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 333–34 (E.D.Pa.1982), *citing* 1 Collier Bankr. Manual § 101.13 (1981), *remanded on other grounds,* 38 B.R. 879 (Bankr.E.D. Pa.1984).

■ We disqualify ML & B [23] based on following relationships. Joseph Hennessy,

---

**21.** We also recognize our broad equity powers to appoint a trustee to protect the estate and creditors. *In re Russell,* 60 B.R. 42, 45 (Bankr. W.D.Ark.1985). Trustees are often appointed when the role and leadership of a debtor's officer is questioned. See e.g., *In re Cohoes Industrial Terminal, Inc.,* 65 B.R. 918, 923 (Bankr.S.D. N.Y.1986). In *Cohoes,* facts leading to trustee appointment included president's role as debtor's counsel, lack of authorization for such representation, and fact that corporate president was "... in no position to exercise undivided loyalty to the rights of all interested parties." *Id.* at 923.

**22.** Section 1107(a) reads, in relevant part:
"(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right, to compen-

sation ... and powers ... of a trustee serving in a case under this chapter."
11 U.S.C. § 1107(a). The section 327 power to hire counsel is made applicable to chapter 11 by virtue of § 103(a), which provides:
Except as provided in section 1161 of this title, chapter 1, 3 and 5 of this apply in a case under chapter 7, 11, or 13 of this title.

**23.** If we find an improper relationship, we can disqualify the entire firm because "... the insider characteristics of one lawyer associated with the firm, whether he or she be an associate, a spacial partner or a capital partner, are sufficient to strip the firm of its claim to disinterestedness. A firm ... is at root an association of lawyers ..." *In re Michigan Interstate Railway Company, Inc.,* 32 B.R. 327, 330 (Bankr.E.D. Mich.1983). *Accord In re Leisure Dynamics, Inc.,* 32 B.R. 751, 752–53 (Bankr.D.Minn.1983), supp. op. at 32 B.R. 753 (D.Minn.1983), *aff'd* 33 B.R. 121 (D.Minn.1983); *In re Roger J. Au &*

an attorney currently practicing with ML & B, is the secretary of Petralex. N.T. at 46. Hennessy is clearly an insider because he is an officer of the debtor.

Disqualification is also possible if the attorney or firm has interests "materially adverse" to the estate or its creditors. 11 U.S.C. § 101(13)(E). "Materially adverse" is not defined in the Code. The same factors that create "disinterestedness" often create "materially adverse" relationships. *See e.g., Smith v. Concord Coal Corp. (In re Concord)*, 11 B.R. 552, 555 (Bankr.S.D.Va.1981). The cases cover a wide spectrum of activity. In the instant case, a former ML & B attorney,[24] Henry, is now an insider because he is in control of the debtor, a general partner of the debtor and the sole shareholder of a corporation (Petralex Sales) in partnership with the debtor. This alone might not cause is to find material adversity. But we couple it with Hennessy's current role as an insider, and the incredible confusion as to who actually speaks for the debtor, *see* discussion, *supra* at n. 3, to find that ML & B has an interest "materially adverse" to the estate.[25]

■ The firm vigorously argues that Mr. Hennessy will resign his position as secretary. Such a resignation would not elevate ML & B unto the realm of disinterestedness.[26] First, the Code of Professional Responsibility proscribes activity creat-

ing the appearance of impropriety.[27] Second, disturbing questions surface amidst the interrelationships. Would Hennessy reassume his role as corporate officer after termination of the bankruptcy? If so, would Hennessy, and thus ML & B, have a financial interest in pursuing a particular course of activity in the bankruptcy? Henry admitted that he paid his own company, Petralex, Ltd., prior to paying Bishop. N.T. at 56. Would ML & B have to decide whether to assert a cause of action against Henry? During the pre-petition period, did Henry pay ML & B bills instead of paying other creditors?[28] Would ML & B be forced to determine whether it had received preferential transfer by virtue of these payments? Ultimately, we must be guided by the principle that all doubts must be resolved against allowing the representation. *In re Liberty Municipal and Vidicor*, 54 B.R. 799, 804 (Bankr.S.D.N.Y.1985). Under the circumstances, we will grant Bishop's motion to disqualify ML & B.

The motion to quash is continued generally based on the oral stipulation entered of record on September 22, 1987.

An appropriate order will follow.

---

*Son, Inc.,* 65 B.R. 322, 326 (Bankr.N.D.Ohio 1986), *aff'd* 64 B.R. 601 (N.D.Ohio 1986); *In re GHR Energy Corp.,* 60 B.R. 52, 67 (Bankr.S.D. Tex.1985).

**24.** In response to Bishop's assertion that Henry was employed by ML & B debtor states that Mr. Henry was never a member of the firm. Debtor's answer to Bishop's motion to disqualify, p. 2, para. 6. We give more weight to Mr. Henry's own testimony that he was employed by Morgan, Lewis. N.T. at 46. If debtor is using the term "member" to distinguish that Henry was not a partner in the firm, we find this distinction invalid. *Michigan Interstate Railway Company, Inc.,* 32 B.R. 327, 330.

**25.** *See generally In re Tauber on Broadway, Inc.,* 271 F.2d 766 (7th Cir.1959) (materially adverse interest where counsel also represented officers); *In re Martin,* 59 B.R. 140, 14 C.B.C.2d 748, B.L.R. para. 71,084 (Bankr.D.Me.1986),

*aff'd* 62 B.R. 943, B.L.R. para. 71,268 (D.Me. 1986) (materially adverse interest found where lawyers held mortgage on debtor's property); *In re Wells Benrus Corp.,* 48 B.R. 196, B.L.R. para. 70,383 (Bankr.D.Conn.1985) (materially adverse interest where one partner had been an officer of the debtor for 17 years and one had been an officer for two years).

**26.** We in no way mean to suggest any improper activity on the part of anyone in the ML & B firm. We must, however, examine both the appearance of impropriety and actual conflicts that have already been alleged.

**27.** *In re Ram Mfg. Inc.,* 49 B.R. 53, 55 (Bankr.E.D.Pa.1985); *In re Leisure Dynamics, Inc.,* 32 B.R. 751, 752–53.

**28.** During the pre-petition period, ML & B performed significant work for Petralex. N.T. at 47, 49.