**In re KOOTENAI MOTOR CO., Inc.**
No. 4082.

District Court, D. Idaho, N. D.
March 19, 1930.

See, also, 41 F.(2d) 403.

W. D. Gillis, Atty. Gen., and Leon M. Fisk and Fred J. Babcock, Asst. Attys. Gen., for the State of Idaho, and for Commercial Printing Company and Fred Holt, intervening creditors.

E. V. Boughton, of Cœur d'Alene, Idaho, and Lund & Dodds, of Spokane, Wash., for resisting creditors.

CAVANAH, District Judge.

An involuntary petition in bankruptcy was on February 10, 1930, filed against the Kootenai Motor Company, who does not contest its adjudication, but the Spokane Merchants' Association, who received a common-law assignment from the bankrupt of its property, and the Chase Engineering Company and the Holly Mason Hardware Company, creditors, insist that three creditors have not petitioned for the adjudication. The act of bankruptcy, which is admitted, is that the bankrupt had made a general assignment of its property to the Spokane Merchants' Association for the benefit of creditors. The hearing on the petition for adjudication was had in the Southern Division. The resisting creditors, who were not residents of the district, first requested that an order be made for the hearing of all issues of law and fact upon the petition in the Northern Division. The court being present within the district must hear the issues of the adjudication. The resisting creditors do not apply for a reference to a special master to take testimony, but ask that the hearing on the adjudication be at Cœur d'Alene, in the Northern Division. Jurisdiction is given to the United States District Courts throughout the district, regardless of the creation of divisions within the district, and may for proper reasons transfer cases from one division to another. Gopcevic v. Calif. Packing Corp. (D. C.) 272 F. 994. It appears that the bankrupt is not making any resistance to the adjudication, and is not requesting that the hearing on the adjudication be had in the Northern Division. The assets of the bankrupt are being held at a large expense, and will continue until the adjudication is had. None of the resisting creditors being residents of the state of Idaho, they would not as a matter of right and for the reason thus stated be entitled to the adjudication in any specific division.

The grounds of the motion to make the petition more definite by pleading facts constituting insolvency, although it is stated in the petition that the bankrupt is insolvent, would seem to be immaterial where it is alleged and admitted that the bankrupt has made a general assignment of his property for the benefit of creditors. "A general assignment for the benefit of creditors is an act of bankruptcy, to which there can be no possible defense except a denial of the fact. It is followed by a petition in bankruptcy, and the bankruptcy court obtains exclusive jurisdiction entirely, irrespective of the question of solvency or insolvency."—Collier on Bankruptcy, page 163; George M. West v. Lea Bros., 174 U. S. 590, 19 S. Ct. 836, 43 L. Ed. 1098; Remington on Bankruptcy, vol. 1, § 184.

The petition then stating sufficient facts to warrant an adjudication, we come to the consideration of the question as to whether the petition is void for want of proper petitioners. It is necessary that at least three creditors ask for the adjudication. Section 59b, Bankruptcy Act, 11 USCA § 95(b), U. S. Comp. Stats. 1901, p. 3445. The three creditors who signed the petition were the state of Idaho, George W. Jordan, and Clyde J. Chaffins, to whom the bankrupt was indebted in the total sum of $3,924.56; the claim of the state being for excise tax on gasoline sold by the bankrupt in the state as motor fuels, and the claims of Jordan and Chaffins being small amounts which were assigned to them by the Spokane Battery & Ignition Company and John W. Graham & Co., and represented amounts owing by the bankrupt.

The three claims are challenged, as it is contended first that the claim of the state is not a provable one, for the reason that it is a tax and has a priority of payment, and therefore is not a debt within the meaning of the Bankruptcy Act. It will be observed that the tax here is not a general property tax, protected by a lien on the property involved. It is nothing more than an excise tax and an obligation against the bankrupt. It does not carry a lien, because the property it covers has been expended by use. It could not be paid by the trustee without proof of the number of gallons of gasoline sold by the bankrupt. Under chapter 203 of the Laws of Idaho 1927, it was due when the petition was filed, and the authority was then given to the state of Idaho to sue for its recovery. The amount of a tax due on personal property necessary to maintain a proceeding in involuntary bankruptcy was recognized by the court in the case of Kaw Boiler Works v. Schull (C. C. A.) 230 F. 587, L. R. A. 1916E,

628, when in computing the bankruptcy indebtedness, and the court there states that the authorities seem to be now uniform that such taxes are provable debts within the meaning of the Bankruptcy Act, and in computing the indebtedness of the bankrupt they should be included. The issue in that case was whether the indebtedness of Schull, the bankrupt, amounted to $1,000, the minimum fixed by the statute, and that it was necessary to include the tax claim on personal property to make up that amount. The issues there and here are analogous, and therefore as this tax is a provable debt, the State can be one of the petitioning creditors. In re Corwin Mfg. Co. (D. C.) 185 F. 976; In re William F. Fisher & Co. (D. C.) 148 F. 907.

Relative to the further objection of the resisting creditors that, Jordan and Chaffins being employees of the state, they purchased the claims for the use of the state, and therefore their claims do not constitute independent claims against the bankrupt. It appears from their testimony that they are employees of the state, but purchased the claims with their own funds, and in their individual capacity, and did not do so for the state. While the testimony of one of the assignors is that Jordan said he was purchasing the claim for the state, it is denied by Jordan, and, under the familiar rule that one who affirmatively asserts the existence of a fact assumes the burden of proof, this fact has not been established by the resisting creditors. One would infer from the evidence that Jordan and Chaffins purchased the claims for the purpose of instituting bankruptcy proceedings, which they had the right to do, although the state also had a claim. Their act would not constitute a fraud against the bankrupt, for the act of bankruptcy was committed prior thereto by the bankrupt when in making the assignment of property.

The most important question raised by the resisting creditors is that as the assignors of the two claims, which Jordan and Chaffins purchased, were members of the Spokane Merchants' Association at the time of the assignment made by the bankrupt, they had automatically consented to any assignment made to the association for the benefit of creditors, and by reason thereof the vendors had estopped themselves from questioning the assignment for the benefit of creditors, and their disability extended to their vendees, the two signing petitioners. This contention requires the application of the doctrine, now well settled, that where one voluntarily chooses to assent to the terms of an assignment made by a bankrupt for the benefit of his creditors, in preference to exercising his rights under the Bankruptcy Act, he will be considered as electing between his rights under the assignment and his rights under the Bankruptcy Act, and if the facts disclose that he has assented to the assignment he is thereafter estopped from shifting his position by joining in a petition as petitioning creditor in bankruptcy. His position in such case becomes inconsistent and antagonistic, and therefore it disqualifies him from filing a petition in bankruptcy based on the assignment as an act of bankruptcy. It is now uniformly held that where one has placed himself in such position he is estopped from setting up the assignment for the benefit of creditors as a ground for adjudging the assignor a bankrupt. Despres et al. v. Galbraith (C. C. A.) 213 F. 190; In re Romanow (D. C.) 92 F. 510; Utz & Dunn Co. et al. v. Regulator Co. et al. (C. C. A.) 213 F. 315. This principle is clearly stated in Remington on Bankruptcy (3d Ed.) vol. 1, § 247: "But where the very act of bankruptcy urged is the making of a general assignment, creditors who have assented thereto are estopped and may not be petitioning creditors nor be reckoned in ascertaining the number of creditors." See Collier on Bankruptcy, p. 1221. And this principle does not defeat the object of the Bankruptcy Act, for as was said by Judge Taft in Simonson v. Sinsheimer (C. C. A.) 95 F. 948, 952: "The estoppel we are considering, if recognized and enforced, does not affect or detract from the paramount character of bankruptcy proceedings, when properly begun, but only prevents the institution of such proceedings by persons who were privy to the act of which they complain, and on which they found their prayer for an adjudication."

Recognizing then the rule thus stated, do the facts in this proceeding come within it, and did the assignors of the two claims assent to the assignment made by the bankrupt? If so, they are now estopped from becoming petitioning creditors. The evidence shows that on January 21, 1930, the Spokane Merchants' Association accepted an assignment from the bankrupt of its property and took possession of it under the assignment, and at the time of doing so the vendors of the two claims now held by Jordan and Chaffins were members of the association. On January 23, 1930, Graham &

Co., one of the assignors of the claim to Chaffins, filed it with the association, and thereafter, on January 29, 1930, withdrew it from the association and assigned it to Chaffins. After the assignment made by the bankrupt, the Spokane Battery & Ignition Company, assignor of Jordan, filed its account with the association, and thereafter, on January 30, 1930, withdrew it from the association.

The object and power of the Spokane Merchants' Association, as disclosed by its articles of incorporation, and the testimony of the witness Meikle, its secretary, are the co-operation of its stockholders in all matters of interest to them, the maintenance of a credit information bureau and collection business, etc., and as testified to by its secretary it is composed of merchants and bankers for the purpose of adjusting insolvent merchants and solving problems that they may be confronted with. The Graham & Co., and the Spokane Battery & Ignition Company, being members of the association which had authority to accept the general assignment made to it by the bankrupt for the benefit of its creditors, and who within a few days thereafter filed a statement of their claims with the association, have assented to and also ratified the acceptance of the general assignment of the bankrupt, and cannot, after doing so, be heard to say that they did not by affirmative action consent to the assignment. They were members of an association which they authorized to accept the assignment from the bankrupt, and which association had taken over the property of the bankrupt under the assignment. We must not forget that this association was representing them, and its acts were theirs. After the assignment was made, they, with knowledge of it, filed their claims with the association, the assignee, and expected to participate pro rata with other creditors in the assets of the bankrupt and the expenses incurred by the association. To allow them, in view of their conduct, which was recognition of the general assignment, to shift their position simply because they happened to receive the full amount of their claims from Jordan and Chaffins, would do violence to the principle above stated. Under the evidence, Graham & Co., and the Spokane Battery & Ignition Company should be held to their participation and assent in the assignment out of consideration for the other members of the association who joined in authorizing and confirming the acceptance of the assignment, and they are now therefore estopped from becoming petitioning creditors in this proceeding.

But petitioning creditors urge that should it be held that the two original creditors are estopped from becoming petitioning creditors, the petition is not void because there are two additional creditors having provable claims, and who have petitioned the court to allow them to join in the original petition, and on March 5, 1930, they were allowed to intervene. If the intervening creditors have provable claims against the bankrupt and do not come under the disability above stated of the two original petitioning creditors, and the original petition being valid on its face, and the state being an eligible petitioner, they would acquire the status of petitioning creditors as of the date upon which the original petition was filed. Their application to join in the original petition is a right secured to them by the Bankruptcy Act, § 59f, 11 USCA § 95(f), which provides that creditors other than original petitioners may at any time enter their appearance and join in the petition. Permission then having been granted to them to intervene, and join in the original petition, they acquired the status of petitioning creditors. They have this right to come in at any time before the court makes the adjudication or dismisses the petition. In re Diamond Fuel Co. (C. C. A.) 6 F.(2d) 773; In re Vastbinder (D. C.) 126 F. 417; In re Freeman Cotting Coat Co. (D. C.) 212 F. 551; In re Hibel Fur Co. (D. C.) 29 F.(2d) 148; Remington on Bankruptcy, § 262. The decision of the Supreme Court in the case of Canute Steamship Co. et al. v. Pittsburgh & West Va. Coal Co., 263 U. S. 244, 249, 44 S. Ct. 67, 68, 68 L. Ed. 287, is to the effect that: "We therefore conclude that where a petition for involuntary bankruptcy is sufficient on its face, alleging that the three petitioners are creditors holding provable claims and containing all the averments essential to its maintenance, other creditors having provable claims who intervene in the proceeding and join in the petition at any time during its pendency before an adjudication is made, after as well as before the expiration of four months from the alleged act of bankruptcy, are to be counted at the hearing in determining whether there are three petitioning creditors qualified to maintain the petition, it being immaterial in such case whether the three qualified creditors joined in the petition originally or by intervention."

From what has been said, the motion of the resisting creditors to dismiss will be denied, and further time is granted to the parties to take additional testimony before Ralph S. Nelson, a special master at Cœur d'Alene, Idaho, on or before April 1, 1930.