**FRIENDS OF THE SAKONNET, et al.**

v.

**Bernard R. DUTRA, et al.**

v.

**Paul D. & Judy COOKINGHAM, et al.**

**James E. O'NEIL, et al.**

v.

**Q.L.C.R.I., INC., et al.**

v.

**Paul D. & Judy COOKINGHAM, et al.**

Civ. A. Nos. 88–704P, 88–705P.

United States District Court, D. Rhode Island.

Jan. 30, 1991.

Edward J. Bertozzi, Jr., Edwards & Angell, Providence, R.I., for R.I. Central Credit Union.

Gary Powers, Providence, R.I., for DEM.

Betsy Grossman de Leiris, Newport, R.I., for plaintiff.

S. Paul Ryan, East Providence, R.I., for Save the Bay, Inc.

Michael Rubin, SAAG Providence, R.I., for Rhode Island.

Barry Kusinitz, Temkin & Miller, Providence, R.I., for LaRoche and Q.L.C.R.I.

---

**5.** As indicated in footnote 4 above the Court finds it inappropriate to address the second requirement.

**70**

Kendra Beaver, Dept. of Env. Mngt., Providence, R.I., for Robert Bendick.

Thomas H. Quinn, Jr., Providence, R.I., for Dutra and Alofson.

Matthew F. Medeiros, Jeffrey C. Schreck, Flanders & Medeiros, Providence, R.I., for third party defendants.

James L. Paradise, Middletown, R.I., pro se.

Kenneth R. Tremblay, Tremblay & Gorton, Portsmouth, R.I., for Edward and Norma DeArruda.

Jeremiah R. Leary, Tiverton, R.I.,

Matthew Medeiros, Flanders & Medeiros, Providence, R.I., for Suburban Land Co.

John Voorhees, Tillinghast, Collins & Graham, Providence, R.I., for Davisville Credit Union.

William Y. Chaika, Chaika & Chaika, Cranston, R.I., for Carolyn Rose and Paul Buff.

Stephen B. Lang, Providence, R.I., for P. Alan Ryan.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

These parties have been before this Court on a number of occasions. In order that the Court's time and energy are not wasted, I will confine my discussion only to the facts pertinent to the motion currently before me. On May 18, 1990, this Court issued a preliminary injunction against David LaRoche, Q.L.C.R.I. and the LaRoche Grantor Income Trust ordering the pumping and hauling of sewage from the Sherwood Village residential development. After Mr. LaRoche stopped carrying out his duties under the injunction, I found him in contempt on October 10, 1990. By written order, a modified attachment order was entered on October 16, which attached all assets of Mr. LaRoche and 25% of his net salary. Plaintiffs have now moved for a supplemental attachment on the following grounds: 1) this Court is not, as it previously thought, constrained by the limitations of the Consumer Credit Protection Act, 2) the attachment has not produced as much money as was anticipated, 3) Mr. LaRoche will be able to support his family under an increased attachment, and 4) DEM is not receiving enough money under the current attachment to carry out the interim remedy.

The plaintiffs seek several changes in the existing attachment: 1) an increase in the attachment in salary from 25% to approximately 98% (leaving Mr. LaRoche $50 per week), 2) a clarification of the definition of net salary income so that only legally mandated deductions are subtracted in arriving at this sum, 3) an order to Mr. LaRoche that he ensures that his 18,030 shares of unpledged NECO stock are issued in proper certificates and surrendered to DEM, 4) a clarification that the attachment effectuates the garnishment of debenture payments by NECO to Mr. LaRoche, 5) a clarification that the attachment effectuates a garnishment of mortgage payments by NECO to a bank to pay Mr. LaRoche's mortgage on his Vermont condominium, 6) a clarification that the attachment effectuates a garnishment of payments by NECO to an insurer to pay Mr. LaRoche's personal term life insurance policy premiums, 7) the addition of Q.L.C.R.I. as a party subject to the attachment, and 8) a technical clarification that, notwithstanding DEM's intervention in carrying out the interim remedy, the legal obligation to provide an ongoing interim remedy remains with Mr. LaRoche.

The LaRoche defendants have argued in response that there have been no changed circumstances to warrant a modification in the original order of attachment. They assert that the Consumer Credit Protection Act does apply or, in the alternative, that the policies underlying the statute mandate the denial of a higher attachment. Defendants have stressed the "deterioration" of Mr. LaRoche's financial condition and state that it would be impossible for Mr. LaRoche to support his family on $50 a week. To further complicate matters, three of Mr. LaRoche's creditors filed an involuntary petition under Chapter 11 of the Bankruptcy Code against Mr. LaRoche on January 2, 1991. Plaintiffs argue that the bankruptcy proceedings do not affect this Court's ability to provide additional relief. Because

this issue could be dispositive, I will address it before considering the need for a supplemental order of attachment.

## I. THE AUTOMATIC STAY PROVISION OF THE BANKRUPTCY CODE

■ Under the bankruptcy code, the filing of a petition acts as an automatic stay of "the commencement or continuation ... of a judicial ... proceeding against the debtor that was or could have been brought before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title," 11 U.S.C. § 362(a)(1), and "the enforcement, against the debtor or against the property of the estate, of a judgment obtained before the commencement of the case under this title," 11 U.S.C. § 362(a)(2). There are, however, exemptions to the automatic stay provision, two of which are pertinent here. Under § 362(b)(4) "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power" is not stayed, and under § 362(b)(5) "the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power" is likewise not stayed.

Plaintiffs assert, with solid support, that these exemptions apply to this case. The Supreme Court has noted that the legislative history of the statute indicates Congress's desire to create an exemption for actions relating to health and safety:

> "Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, *environmental protection,* consumer protection, *safety,* or *similar police or regulatory laws,* or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay."

*Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 504, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986) (*quoting* H.R.Rep. No. 95–595 at 343 (1977); S.Rep. No. 95–989 at 52 (1978);

U.S.Code Cong. & Admin.News 1978, pp. 5787, 5838, 6299 (emphasis added)). This language seems to clearly cover the case at hand. This case also comes under the rubric of the First Circuit case of *Cournoyer v. Lincoln,* in which the Court of Appeals warned that the automatic stay "should not be used as a shield against the application and enforcement of valid state and local laws." 790 F.2d 971, 977 (1st Cir.1986) (court found that town's removal of used truck parts from land and subsequent sale of parts to cover its costs were within § 362(b)(4) and (5)).

The only possibly debatable question is whether the attachment in this case is a "money judgment" and thus fits the exception within the exception of § 362(b)(5). The leading case on the issue is *Penn Terra Ltd. v. Dep't of Environmental Resources,* 733 F.2d 267 (3d Cir.1984), cited with approval by the First Circuit. *Cournoyer,* 790 F.2d at 976. The Third Circuit took note of the importance of states' police powers and found significant policy reasons for interpreting the exemptions outlined in § 362(b)(4) and (5) broadly and the money judgment exception of § 362(b)(5) narrowly. *Penn Terra,* 733 F.2d at 273. The court went on to define a money judgment as:

> an order entered by the court or by the clerk, after a verdict has been rendered for plaintiff, which adjudges that defendant pay a sum of money to the plaintiff. Essentially it need consist of only two elements: (1) an identification of the parties for and against whom judgment is being entered, and (2) a *definite* and *certain* designation of the amount which plaintiff is owed by defendant.

*Id.* at 275 (emphasis in original). The court found that the injunction ordering compliance with environmental laws "was in form and in substance not one to obtain a money judgment, it follows that it could not be one to enforce the payment of such a judgment," *id.,* and that the action was an equity action to compel the performance of certain remedial acts. *Id.* The current case is different only in that money is flowing from defendants to plaintiffs. But that does not change the basic nature of

the action. This was not an action at law to recover a debt owed by defendants to plaintiff for a sum certain, nor is it redress for past harms. This is an order issued because defendants were found in contempt. The order of attachment is in support of a purely equitable decree. As in *Penn Terra*, defendants do not fall within the money judgment exception. The actions of this Court, therefore, are not in any way affected by the automatic stay provisions of 11 U.S.C. § 362(a).

## II. ENLARGING THE ATTACHMENT

Plaintiffs argue that the attachment should be supplemented because the intentions of this Court are not being realized in several respects. Defendants respond by asserting that the costs and monies realized are exactly as was foreseen by the Court and the parties when the order of attachment was issued. As far as I am concerned, the only intention of this Court that matters is my intention that sufficient funds should be obtained from Mr. La-Roche to enable the continued pumping and hauling of sewage at Sherwood Village. According to the affidavits of Edward S. Szymanski, Chief of the Division of Water Resources at DEM, the costs anticipated of pumping, hauling and disposing the sewage and the potential sanding and snow removal costs equal $7,575.00 per week, considerably more than the current average weekly deposit of $1,357.64. Supplementing the original order of attachment is, therefore, clearly called for. The only potential obstacle to increasing the attachment is the Consumer Credit Protection Act. As set out below, however, the Act does not apply to this case.

### A. *Consumer Credit Protection Act*

■ The Consumer Credit Protection Act, 15 U.S.C. § 1671, *et seq.*, limits garnishments to 25% of a person's disposable weekly earnings. The question is whether this limitation applies to the facts of this case. The Supreme Court has noted that,

Congress did not enact the Consumer Credit Protection Act in a vacuum.... When "interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature...."

*Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974) (*quoting, Brown v. Duchesne*, 19 How. 183, 194, 15 L.Ed. 595 (1857)).

The Act sets out Congress's findings and purpose, including that, "The unrestricted garnishment of compensation due for personal services encourages the making of predatory extensions of credit. Such extensions of credit divert money into excessive credit payments and thereby hinder the production and flow of goods in interstate commerce." 15 U.S.C. § 1671(a)(1). The legislative history of the Act also indicates its purpose. Reference is made to the many cases in which "wages are garnished by unscrupulous merchants and lenders whose practices trap the unwitting workers." 1968 U.S.Code Cong. & Admin. News, pp. 1962, 1966. The Act is "both practicable and workable to the credit and retail industries, while, at the same time, providing customers with needed protection in their credit transactions." *Id*. Finally, the Act, "while permitting the continued orderly payment of consumer debts, will relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families." *Id*. at 1979.

The impetus for the Act, as the legislative history makes certain, was protecting struggling consumers from unscrupulous creditors. I feel confident in stating that Congress did not intend the Act to be used by polluters as a means of avoiding their court-ordered obligations to carry out the requirements of federal and state environmental law. The people of Sherwood Village, not Mr. LaRoche, are the ones truly in need of protection. This interpretation of the Act is supported by the limited case

law on the subject. *See Brown v. Liberty Loan Corp.*, 392 F.Supp. 1023, 1032 (M.D. Fla.1974), *rev'd on other grounds*, 539 F.2d 1355 (5th Cir.1976), *cert. denied*, 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977) ("[T]he legislative history of the Act as it relates to garnishment indicates that its primary thrust is directed toward abuses of the procedure by consumer financial lenders, such as loan companies."); *Carter v. State*, 393 So.2d 1368, 1371 (Ala.1981) (Act does not apply to civil contempt); *Kahn v. Trustees of Columbia University*, 109 A.D.2d 395, 492 N.Y.S.2d 33, 36 (1985) (garnishment provisions in Act were part of "larger effort to protect unwary consumers from" "unscrupulous lenders and merchants"). My reading of Congressional intent is that the Consumer Credit Protection Act was not meant to apply to the circumstances of this case.

An additional argument could be made that the attachment does not involve a "garnishment" within the meaning of the statute. "Garnishment" is defined as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." The attachment in this case "cannot be transformed into a judgment for money damages due" and "does not reflect a debtor/creditor relationship." *Kornit v. Board of Educ.*, 534 F.Supp. 94, 95 (E.D.N.Y. 1981), *aff'd* 677 F.2d 13 (2d Cir.1982). There is thus support for the contention that this attachment is outside of the Act because there is no "debt" according to the common understanding of the word. *See id.* (Act does not apply to criminal contempt because it does not involve a "debt").

### B. *Scope of Relief*

Having found that the DEM needs additional money to fund the sewage treatment and that the Consumer Credit Protection Act was not intended to apply to cases such as this, I must determine the extent of the additional relief that ought to be granted. Defendants urge that even if the Act does not apply, this Court should heed its intention that debtors be able to support their families. Garnishment can indeed often be a harsh measure. "For a poor man—and whoever heard of the wage of the affluent being attached?—to lose part of his salary often means his family will go without the essentials." *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 342 n. 9, 89 S.Ct. 1820, 1823 n. 9, 23 L.Ed.2d 349 (1969) (*quoting* Congressman Gonzales, 114 Cong.Rec. 1833). Mr. LaRoche, for all his financial difficulties, is not the typical "poor man" usually subject to garnishment. His gross monthly salary is approximately $26,000. Many families well above the poverty level live for a year on similar amounts. I can easily garnish more than the 25% allowed by the Consumer Credit Protection Act without endangering Mr. LaRoche or his family. At the same time, the plaintiffs' request that I exempt only $50 per week for Mr. LaRoche and his four dependents is equally out of touch with reality.

At this stage, I feel that I do not have sufficient information to set a specific figure which will meet the DEM's needs without impairing Mr. LaRoche's ability to support his family. I, therefore, reserve judgment on the level of the increased salary attachment. I am prepared to immediately grant the following relief:

### ORDER

It is ordered that: 1) net salary income in the order of attachment shall mean all salary, adjusted only for the following legally mandated deductions: Federal Income Tax withholding, State Income Tax withholding, FICA, and Rhode Island Temporary Disability Insurance; 2) Mr. LaRoche is to ensure that his 18,030 shares of unpledged NECO stock are issued in proper certificates and that the certificates are surrendered to DEM; 3) the attachment order is to apply to all funds paid by NECO on debentures owned by Mr. LaRoche or the LaRoche Grantor Income Trust; 4) the attachment order is to apply to all funds NECO would otherwise pay to any mortgage holder to pay any mortgages on any land held in the name of Mr. LaRoche or the LaRoche Grantor Income Trust; and 5) the attachment order is to apply to any insurance premiums paid by NECO on behalf of Mr. LaRoche other than group

health insurance and other than the following legally mandated public insurance programs: social security, temporary disability insurance, worker's compensation and unemployment compensation.

Before I can rule on the specific level of the income attachment I need additional information. Both parties are ordered to submit to me, within ten days of this order's issuance, an estimate of Mr. La-Roche's net monthly income, taking into account all the relief granted in this order. If the figures are not reasonably similar, I will reluctantly hold a hearing on the issue. Once I have a figure before me, I will issue a supplemental order of attachment which will specify a salary attachment figure somewhere in excess of the present level.