**In re David F. LaROCHE, Debtor.**

**Civ. A. No. 91–0160L.**

United States District Court,
D. Rhode Island.

Sept. 11, 1991.

Edmond J. Ford, Ford & Ford, Portsmouth, N.H.

Joseph DiOrio, Hinckley, Allen, Snyder & Comen, Providence, R.I., for Suffield Bank.

Stephen B. Lang, Higgins, Cavanagh & Cooney, Providence, R.I.

Matthew F. Medeiros, Neal J. McNamara, Flanders & Medeiros, Inc., Providence, R.I.

Richard M. Peirce, Providence, R.I.

Gary E. Powers, Providence, R.I.

William Dolan, Brown, Rudnick, Freed & Gesmer, Providence, R.I.

Robert D. Wieck, MacAdams. & Weick, Inc., Providence, R.I.

Kendra L. Beaver, Dept. of Environmental Management, Providence, R.I.

Michael Rubin, Dept. of the Atty. Gen., Providence, R.I.

William C. Hillman, Thomas Hemmendinger, Strauss, Factor, Hillman & Lopes, Providence, R.I.

John M. Marks, Vetter & White, Providence, R.I., for Amoskeag Bank.

Betsy Grossman de Leiris, Newport, R.I.

Edward J. Bertozzi, Jr., Edwards & Angell, Providence, R.I., for R.I. Central Credit Union.

Mary A. McReynolds, William J. Byrnes, Haley, Bader & Potts, Washington, D.C.

Edward J. Bertozzi, Jr., Katherine A. Merolla, Asquith, Merolla, Anderson, Archetto & Kane, Providence, R.I., for Dartmouth Bank.

Office of the U.S. Trustee, Boston, Mass.

Allan M. Shine, Winograd Shine & Zacks Inc., Providence, R.I.

Mal A. Salvadore, Patrick M. Allienello, Soundler Salvadore & DiCristofaro, Providence, R.I., for David F. LaRoche, appellant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is before the Court on the appeal of David F. LaRoche, who seeks review, pursuant to 28 U.S.C. § 158 (1988), of an Order for Relief entered by the Bankruptcy Court on February 21, 1991. The order granted relief based on an involuntary Chapter 11 bankruptcy petition filed on January 2, 1991, by creditors Amoskeag Bank ("Amoskeag") and Dartmouth Bank, both of Manchester, New Hampshire, and Connecticut National Bank d/b/a Shawmut Bank of Rhode Island ("Shawmut").

## BACKGROUND

Before entering its order, the Bankruptcy Court held a hearing on February 20, 1991. At the hearing, LaRoche's attorney objected to Amoskeag's qualifications as a petitioning creditor. At issue was whether Amoskeag's claim against LaRoche was subject to a "bona fide dispute," as that phrase is used in the Bankruptcy Code, 11 U.S.C. § 303(b) (1988),[1] and if the claim was indeed legitimately disputed, whether Amoskeag's invocation of the Bankruptcy Court's jurisdiction was made in bad faith. Although Bankruptcy Judge Votolato listened to arguments by attorneys on both sides of this issue, ultimately he declined to make findings on this point.

Instead, Judge Votolato allowed another creditor present at the hearing, Suffield Bank, to join the petition, effectively replacing Amoskeag.[2] He then listened to

evidence demonstrating that LaRoche was generally not paying his debts as they became due. Judge Votolato concluded:

> [B]ased on the documents and the record of this morning's hearing, prior hearings, and also including the proceedings in other Courts and the rulings in those other Courts, I can make the following findings: that there are at least three Creditors qualified to be petitioning Creditors in this case, that LaRoche is not paying his obligations and debts as they become due. . . . I really don't see any need to elaborate at all. I've made what I think are the two necessary findings. I will order the entry of an order for relief against the Debtor. . . .

Transcript of 2/20/91 Hearing, pp. 36–37.

As the basis of his appeal, LaRoche cites four grounds. The first is the issue, mentioned above, concerning Amoskeag's eligibility to participate in the bankruptcy petition. If, as LaRoche asserts, Amoskeag's claim is subject to a bona fide dispute and its petition was filed in bad faith in violation of Bankruptcy Rule 9011, then, according to LaRoche, Amoskeag's bad faith vitiates the entire petition, rendering co-petitioners Shawmut and Dartmouth Bank ineligible and barring the intervention of Suffield Bank, or any other subsequent creditor.

LaRoche's second claim is that the "eleventh-hour" intervention of Suffield Bank as the third petitioning creditor prejudiced LaRoche because he had insufficient time to evaluate Suffield Bank's qualifications or conduct adequate discovery. Third, LaRoche asserts that Shawmut should have been disqualified as a petitioner because it was not represented by counsel at the hearing. Finally, LaRoche claims that he was unduly prejudiced when Judge Votolato

---

1. 11 U.S.C. § 303(b) provides:

   An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

   (1) by three or more entities, each of which is either a holder of a claim against such person that is *not contingent as to liability or the subject of a bona fide dispute,* or an indenture trustee representing such a holder, if

   such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims. . . . (Emphasis added.)

2. During the hearing, another creditor, Rhode Island Central Credit Union, telephoned the court clerk and indicated its intention also to join the petition.

permitted the hearing to proceed with Shawmut as a qualified petitioning creditor before he had adequate time for discovery.

## I. THE CLAIM OF BAD FAITH AGAINST AMOSKEAG BANK

LaRoche asserts that Amoskeag's claim on his assets is subject to a bona fide dispute, and, consequently, Amoskeag cannot serve as one of the three creditors on the involuntary bankruptcy petition. According to LaRoche, the fact that Amoskeag knew its claim was disputed but participated in the petition anyway constitutes an improper attempt to invoke the Bankruptcy Court's jurisdiction and taints the entire involuntary petition. Because an additional eligible creditor was present at the hearing, Judge Votolato put aside the issue of Amoskeag's qualifications and proceeded with Suffield Bank as the third petitioner. However, LaRoche is correct to this extent: because he has challenged Amoskeag's eligibility, a finding of fact concerning Amoskeag's good or bad faith is necessary at the outset in order to establish the legitimacy of the bankruptcy petition.

### A. A petition filed in bad faith must be dismissed

■ If a creditor's claim is subject to a bona fide dispute, then that creditor may not serve as a petitioner on an involuntary bankruptcy petition. 11 U.S.C. § 303(b) (1988). If the petition is filed in good faith but the Bankruptcy Court later finds a petitioner to be ineligible because of a disputed claim, then joinder of other eligible petitioners is a matter of right under 11 U.S.C. § 303(c) (1988).[3] If the petition was not filed in good faith, however, then no joinder is allowed, and the petition must be dismissed. As Judge Votolato wrote in *In re Rite–Cap, Inc.*, 1 B.R. 740, 741–42 (Bankr.D.R.I.1979):

> An essential prerequisite for allowing joinder of additional creditors to cure a defective petition is that the petition was

filed initially in good faith. If the original petition was a sham, prepared with a view of being later supported by intervention of other creditors, joinder should be denied.... [I]f the original petition is filed in bad faith and with knowledge of its falsity, it will be dismissed as a fraudulent attempt to confer jurisdiction on the court.

*See also In re Crown Sportswear, Inc.*, 575 F.2d 991, 993 (1st Cir.1978); *Myron M. Navison Shoe Co. v. Lane Shoe Co.*, 36 F.2d 454, 459 (1st Cir.1929); *In re Centennial Ins. Assoc., Inc.*, 119 B.R. 543, 546 (Bankr.W.D.Mich.1990).

■ A petitioning creditor's good faith is generally presumed. *In re Caucus Distrib., Inc.*, 106 B.R. 890, 923 (Bankr. E.D.Va.1989). The debtor asserting bad faith, as an affirmative defense, has the burden of proving the creditor's bad faith by a preponderance of the evidence. *Id.; Crown Sportswear*, 575 F.2d at 993; *Rite-Cap*, 1 B.R. at 742; *In re Petralex Stainless, Ltd.*, 78 B.R. 738, 743, 744 n. 19 (Bankr.E.D.Pa.1987).

The United States Court of Appeals for the First Circuit indicated in *Crown Sportswear* that a court must consider only the evidence in the record in making its determination of good faith, employing a combination of the objective and subjective standards: Did the creditor know, or should he have known, that the petition was defective? *Crown Sportswear*, 575 F.2d at 992, 994.

Applying these rules, this Court concludes that if Amoskeag's claim is indeed subject to a bona fide dispute, but Amoskeag filed its petition in good faith, then the petition may be cured by the joinder of Suffield Bank. If, however, Amoskeag knew or should have known that its claim was legitimately disputed and therefore ineligible, then the petition was filed in bad faith and must be dismissed, because Amoskeag's bad faith would taint Shaw-

---

**3.** 11 U.S.C. § 303(c) provides:

After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioner under subsection (b) of this section.

mut and Dartmouth Bank's filing, and render joinder of Suffield Bank impermissible. Although Judge Votolato stated at the hearing that there was no evidence of bad faith on the part of Shawmut or Dartmouth Bank, Transcript of 2/20/91 Hearing, p. 14, he made no determination on the key issue of Amoskeag's good faith.

### B. The Court may make a finding concerning Amoskeag's good faith

■ Normally, this Court would remand this case to the Bankruptcy Court for a finding on the issue of Amoskeag's good faith. But where, as here, the Bankruptcy Court has gathered evidence on the good faith issue, all of which is on the record, this Court believes that it has authority to make its own finding of fact. In a bankruptcy appeal, when faced with a similar factual finding omission, the United States District Court for the District of Puerto Rico wrote:

> Although generally speaking the bankruptcy court should be allowed to make all the necessary findings of facts to support its conclusions, appellate courts need not remand and may make additional findings themselves when the evidence before it is documentary or if all the facts relied upon to support the particular judgment are in the record before the appellate court and are undisputed.

*Betancourt v. Garcia*, 49 B.R. 620, 622 (D.P.R.1985); *see also Texas Co. v. R. O'Brien & Co.*, 242 F.2d 526, 529 (1st Cir. 1957); *In re Belle–Moc, Inc.*, 182 F.Supp. 429, 431 n. 2 (D.Me.1960); *In re Legel, Braswell Gov't Sec. Corp.*, 648 F.2d 321, 326 n. 8 (5th Cir.1981); *King v. Comm'r of Internal Revenue*, 458 F.2d 245, 249 (6th Cir.1972).

### C. Amoskeag's petition was filed in good faith

■ A review of the facts surrounding Amoskeag's claim is necessary. These facts are undisputed and set forth in the record below.

In 1989, LaRoche borrowed more than $3 million from Amoskeag. The loan was secured by a collateral Pledge Agreement, pledging 5,000 shares of stock of NECO Enterprises, Inc. ("NECO"), a publicly-traded real estate development company headed by LaRoche and based in Rhode Island. The stock subsequently split, and a debenture was converted, bringing the amount of pledged stock to approximately 500,000 shares, or 26% of NECO's stock. In March 1990, LaRoche defaulted on the loan. In May 1990, Amoskeag re-registered the pledged stock in its own name, a transaction authorized by the Pledge Agreement. Amoskeag notified LaRoche of its intent to sell the stock, and LaRoche responded, through his attorney, that the "stock in question is 'restricted,' pursuant to Rule 144 promulgated by the Securities and Exchange Commission under the Securities Act of 1933, and cannot be sold as proposed by the Amoskeag Bank." Letter from Barry J. Kusinitz to James Edward III, Executive Vice President of Amoskeag Bank, dated 6/22/90. Amoskeag did not sell the stock, and on July 6, 1990, trading of the stock on the American Stock Exchange was suspended. On August 30, 1990, Amoskeag filed suit in United States District Court for the District of New Hampshire, seeking to recover $3 million from LaRoche on the promissory note. Accompanying the complaint was a motion to attach his property in New Hampshire as security pending the outcome of the litigation. The same complaint and motion were filed in this Court on September 6, 1990, seeking to encumber LaRoche's Rhode Island assets.

In his answer filed in the New Hampshire case, LaRoche claimed that Amoskeag's transfer of the stock into its own name constituted hypothecation and, therefore, payment as a matter of law. If Amoskeag had sold the stock when it made the transfer, LaRoche now argues, then the proceeds would have satisfied his debt, wiping out his default and Amoskeag's claim in bankruptcy. On the basis of this defense, Chief Judge Devine of the District of New Hampshire denied Amoskeag's motion to attach. Judge Devine's ruling added credence to LaRoche's charge that Amoskeag's bankruptcy claim is subject to a bona fide dispute. The New Hampshire litigation and Judge Devine's decision com-

prised the only evidence of Amoskeag's bad faith that was produced at the hearing before Judge Votolato.

This Court, however, has determined that other evidence on the record demonstrates the disingenuousness of LaRoche's defense and claim of a bona fide dispute. This evidence consists of the previously-cited letter from Attorney Kusinitz to Amoskeag, and LaRoche's own testimony at a hearing before Senior Judge Pettine in the District of Rhode Island on October 9 and 10, 1990. Both the letter and the testimony indicate that selling the stock in the spring of 1990 was not a realistic option for Amoskeag.

The letter from Attorney Kusinitz to Mr. James Edward III, an officer of Amoskeag, explains that the stock is beneficially owned by LaRoche, a majority stockholder in NECO. It is therefore subject to Securities and Exchange Commission regulations restricting its sale. The letter closes on an ominous note: "While we understand the Bank's frustration, it hardly seems wise to create problems which cannot be cured. I await your call on Monday morning; otherwise, the Bank proceeds at its peril."

On October 9 and 10, 1990, LaRoche discussed the trading restrictions on NECO stock when he was before Judge Pettine on another matter, *Friends of the Sakonnet v. Dutra*, 125 B.R. 69 (D.R.I.1991). In that case, the State of Rhode Island and the residents of a housing development adjacent to property owned by LaRoche were trying to force LaRoche to repair or replace a failed septic system that was dumping raw sewage into the Sakonnet River. LaRoche pled poverty. *Id.* at 70.

When Rhode Island tried to force LaRoche to sell or turn over 18,000 shares of unencumbered NECO stock, he explained that the stock could not be liquidated and could not have been liquidated even before trading was suspended:

My point really is that the shares of stock have a present liquid value that bears some relationship to the trading experience of the stock itself. You cannot take hundreds of thousands of shares of stock and convert them into cash if they are in a company that only trades a few hundred shares a week. You in effect have a great imbalance of willing buyers and sellers and so you are not going to get the result that a very simplistic multiplication of a stock price times the number of shares would yield.... What I'm saying is that you cannot—if you owned a thousand shares of IBM, you can probably be pretty sure that you will get $100, or whatever it's trading at, because that's what you're selling and there's a wide liquid market. If you owned 1,860,000 shares of a relatively small company and you want to convert that into cash, even if you could trade it legally, you are not going to be able to do that. There is no market of that depth.

Transcript of 10/10/90 Hearing, pp. 33–34. When asked what value NECO stock had to his secured creditors, LaRoche responded:

Well, as I said, as far as me and my creditors are concerned, the maximum amount of stock that can be traded in any quarter, any three-month, 90–day period is one percent of the outstanding, so that's 23,500 shares of stock, which is a really very minimal amount relative to any of those obligations.

Transcript of 10/10/90 Hearing, pp. 35–36.

This testimony calls into serious question whether Amoskeag could ever have sold the approximately 500,000 shares of NECO stock it held in order to satisfy LaRoche's loan obligation of more than $3 million. Certainly, LaRoche was talking out of both sides of his mouth when he claimed, in the New Hampshire case, that Amoskeag should have sold the stock to satisfy the debt, while claiming, in Rhode Island, that a sale of more than 23,500 shares of stock in one quarter would have been virtually impossible. Although LaRoche's bad faith is not directly at issue at this time, it does have a bearing on the reasonableness of Amoskeag's position and the course of conduct it chose to follow after receiving LaRoche's demands regarding the NECO stock.

Relying on the evidence presented below, this Court finds that Amoskeag did not act

in bad faith in pursuing its claim against LaRoche in the District of Rhode Island's Bankruptcy Court. Amoskeag correctly recognized the manufactured nature of LaRoche's defense in the New Hampshire action and reasonably concluded that the defense was not a basis for a bona fide dispute over its claim. Consequently, Amoskeag was not acting in bad faith when it invoked the jurisdiction of the Bankruptcy Court. Although Amoskeag was removed as a petitioning creditor, the subsequent joinder of Suffield Bank is completely proper and the petition as it is now constituted is without defect. *Petralex Stainless*, 78 B.R. at 744 n. 18 ("Even if a bona fide dispute did exist, we would have discretionary power to allow the joinder of additional creditors to 'cure' the defective filing"); *In re Alta Title Co.*, 55 B.R. 133, 142 (Bankr.D.Utah 1985); *In re Hibel Fur Co.*, 29 F.2d 148, 148 (D.Mass.1928), *aff'd*, 33 F.2d 30 (1st Cir.1929).

## II. THE OBJECTION TO SUFFIELD BANK'S LATE INTERVENTION

LaRoche also claims that the intervention of Suffield Bank as the third petitioning creditor allowed him insufficient time to evaluate Suffield Bank's qualifications or conduct adequate discovery.

■ Judge Votolato committed no error when he did not give LaRoche a continuance after allowing Suffield Bank to intervene on the day of the hearing. LaRoche's attorney did not request a continuance. In fact, when Suffield Bank's attorney asked Judge Votolato for a brief opportunity to confer with his client during the February 20, 1991, hearing, LaRoche's attorney protested, saying:

> I have no objection to Mr. D'Orio's [Suffield Bank's attorney's] request at this time provided that there is not a lengthy continuance of this Court's hearing on this involuntary petition whether an order for relief should be entered.

Transcript of 2/20/91 Hearing, p. 8. Failing to request a continuance, LaRoche could hardly expect Judge Votolato to grant him one.

■ Even if LaRoche had requested a continuance, the denial of such a request would not have been improper. Under Bankruptcy Rule 7015 and Rule 15 of the Federal Rules of Civil Procedure, the decision to grant or deny a continuance under these circumstances is committed to the Bankruptcy Judge's sound discretion. *In re J & A Concrete Contractors, Inc.*, 58 B.R. 51, 53 (Bankr.W.D.Tex.1986); *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1222 (7th Cir.1990). Rule 15(b) of the Federal Rules of Civil Procedure provides that the court *may* grant a continuance to give the objecting party time to react to an amendment of pleadings, but nothing in the rule makes a continuance mandatory. Even when a substantial amendment surprises the opposing party, the granting of a continuance is strictly within the trial judge's discretion. *Heay v. Phillips*, 14 Alaska 132, 201 F.2d 220, 222 (9th Cir.1952). In deciding to grant or deny a continuance, a Bankruptcy Judge may consider such factors as judicial economy, the need for quick resolution of issues affecting the administration of bankruptcy estates, and fairness to the parties. *See Fowler v. Jones*, 899 F.2d 1088, 1094 (11th Cir.1990); *In re Crystal Palace Gambling Hall, Inc.*, 36 B.R. 947, 955 (9th Cir.1984), *app. dism.*, 785 F.2d 315, 317 (9th Cir. 1986). Judge Votolato would have acted well within his discretion even if he had denied a requested continuance. He certainly committed no error by not ordering a continuance sua sponte.

Moreover, LaRoche was not prejudiced by not receiving a continuance, since he was fully aware of the character of Suffield Bank's claims against him. More than two months earlier, this Court entered judgment against LaRoche in favor of Suffield Bank on the same debt at issue here. *Suffield Bank v. LaRoche*, 752 F.Supp. 54 (D.R.I.1990). LaRoche did not appeal. At the time of the intervention in Judge Votolato's Court, then, Suffield Bank was already a judgment creditor of LaRoche for more than $550,000. LaRoche could not have been surprised by Suffield Bank's intervention. Any assertion of "prejudice" by LaRoche under these circumstances,

therefore, is without merit. *See Foskey v. United States*, 490 F.Supp. 1047, 1059 (D.R.I.1979).

### III. SHAWMUT'S REPRESENTATION BY COUNSEL

■ LaRoche additionally argues that Shawmut should have been disqualified as a petitioner because it was not represented by counsel at the hearing. The qualification of Shawmut as a petitioner before it had an attorney of record, however, provides no grounds for reversal.

While LaRoche correctly points out that corporations must be represented in court by licensed attorneys, Judge Votolato acted within his discretion in giving Shawmut twenty-four hours to enter an appearance by an attorney. Indeed, LaRoche's own attorney consented at the hearing on February 20, 1991, to a conditional order allowing Shawmut to become a petitioning creditor upon the entry of an appearance by counsel. Transcript of 2/20/91 Hearing, pp. 5, 31. The subsequent, timely appearance by an attorney on behalf of Shawmut cured any alleged technical defect in the number of petitioners, as required by 11 U.S.C. § 303(b) (1988).

■ The most serious complaint LaRoche can make is that, technically, only two petitioning creditors existed on February 20, before Shawmut entered an appearance of counsel the next day to become the third petitioner. Even if this is the case, the law clearly supports the petition. Under the Bankruptcy Code, creditors who later join an involuntary petition cure any defects relating to the number of original petitioners. *Id.* § 303(c); *Alta Title Co.*, 55 B.R. at 142; *In re Midwest Processing Co.*, 41 B.R. 90, 102 (Bankr.D.N.D.1984). The modern Bankruptcy Code has liberal procedural requirements for involuntary relief; it does not support the kind of technical argument LaRoche suggests. *See Midwest Processing Co.*, 41 B.R. at 102.

### IV. THE OBJECTION TO SHAWMUT'S QUALIFICATION AS A PETITIONER

■ Finally, LaRoche claims that he was "unduly prejudiced" when Judge Voto-

lato permitted the hearing to proceed with Shawmut as a qualified petitioning creditor, although Shawmut had not yet entered an appearance of counsel. LaRoche claims that he was forced to defend against the petition at a time when Shawmut "did not even exist" as a petitioner, giving him inadequate time for discovery. Appellant's Brief at pp. 37–38.

This argument is without substance. Petitioning creditors may intervene *at any time* before adjudication or dismissal. 11 U.S.C. § 303(c) (1988); *Midwest Processing Co.*, 41 B.R. at 102; *In re Kootenai Motor Co.*, 41 F.2d 399, 402 (D.Idaho 1930); *Hibel Fur Co.*, 29 F.2d at 148–49. As explained in the previous section, the Bankruptcy Code has liberal procedural requirements for involuntary relief. LaRoche must concede that there is no bona fide dispute as to Shawmut's claim. Thus, LaRoche cannot suggest that Shawmut's delayed appearance of counsel denied him notice of Shawmut's claims against him, or prevented him from understanding the nature of Shawmut's case. In short, LaRoche's contentions are without merit.

### V. CONCLUSION

For the reasons stated above, the Order of the Bankruptcy Court dated February 21, 1991, is *affirmed* and the matter is remanded to the Bankruptcy Court. The Clerk will enter a judgment to that effect forthwith.

*It is so ordered.*